# EXHIBIT D

## Restructuring Support Agreement

THIS RESTRUCTURING SUPPORT AGREEMENT IS NOT AN OFFER OR ACCEPTANCE WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS RESTRUCTURING SUPPORT AGREEMENT SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

THIS RESTRUCTURING SUPPORT AGREEMENT IS THE PRODUCT OF SETTLEMENT DISCUSSIONS AMONG THE PARTIES HERETO. ACCORDINGLY, THIS RESTRUCTURING SUPPORT AGREEMENT IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.

THIS RESTRUCTURING SUPPORT AGREEMENT DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, REPRESENTATIONS, WARRANTIES, AND OTHER PROVISIONS WITH RESPECT TO THE RESTRUCTURING TRANSACTIONS DESCRIBED HEREIN, WHICH TRANSACTIONS WILL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN, AND THE CLOSING OF ANY TRANSACTION SHALL BE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN SUCH DEFINITIVE DOCUMENTS AND THE APPROVAL RIGHTS OF THE PARTIES SET FORTH HEREIN AND IN SUCH DEFINITIVE DOCUMENTS, IN EACH CASE, SUBJECT TO THE TERMS HEREOF.

## *RESTRUCTURING SUPPORT AGREEMENT*

This RESTRUCTURING SUPPORT AGREEMENT (including all exhibits, annexes, and schedules hereto in accordance with Section 11.02, this "**Agreement**") is made and entered into as of June 30, 2025 (the "**Execution Date**"), by and among the following parties (each of the following described in sub-clauses (i) through (iii) of this preamble, collectively, the "**Parties**"):

1.     PHP Holdings, LLC, a limited liability company formed under the Laws of Delaware ("**Parent**"), and each of its affiliates listed on **Exhibit A** to this Agreement that have executed and delivered counterpart signature pages to this Agreement to counsel to the Consenting Stakeholders (as defined herein) (the Entities in this clause (i), collectively, the "**Company Parties**");

2.     the undersigned holders of Prepetition Term Loan Claims that have executed and delivered counterpart signature pages to this Agreement to counsel to the Company Parties (collectively, the "**Consenting Term Loan Lenders**"); and

3.     the undersigned holders (or beneficial holders) of, or nominees, investment advisors, sub-advisors, or managers of discretionary accounts that hold, (a) Prepetition MPT Convertible Notes Claims and (b) Series A-1 Preferred Units,

in each case, that have executed and delivered counterpart signature pages to this Agreement to counsel to the Company Parties (the Entities in this clause (iii), collectively, the "**Consenting Noteholders**" and together with the Consenting Term Loan Lenders, the "**Consenting Stakeholders**").

## RECITALS

**WHEREAS**, the Company Parties and the Consenting Stakeholders have in good faith and at arms' length negotiated or been apprised of certain restructuring transactions with respect to the Company Parties' capital structure on the terms set forth in this Agreement (such transactions, the "**Restructuring Transactions**");

**WHEREAS**, the Company Parties intend to implement the Restructuring Transactions through the commencement of voluntary prearranged cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the cases commenced, the "**PCo Cases**"), which shall be jointly administered with the existing chapter 11 cases of Prospect Medical Holdings, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "**HCo Debtors**" and together with the Company Parties, the "**Debtors**"), in the jointly-administered case captioned *In re Prospect Medical Holdings, Inc.*, et a., No. 25-80002 (such existing cases, the "**HCo Cases**" and together with the PCo Cases, the "**Chapter 11 Cases**");

**WHEREAS**, the Parties have agreed to support the Restructuring Transactions, subject to and in accordance with the terms of this Agreement, and desire to work together to complete the negotiation of the terms of the documents and the completion of each of the actions necessary or desirable to effect the Restructuring Transactions;

**WHEREAS,** the Parties have agreed to take certain actions in support of the Restructuring Transactions on the terms and conditions set forth in this Agreement and the Plan;

**NOW, THEREFORE,** in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

## AGREEMENT

**Section 1.** *Definitions and Interpretation*.

1.01. <u>Definitions</u>. The following terms shall have the following definitions:

"**Administrative Agent**" means Wilmington Trust, National Association (together with its permitted successors and assigns), in its capacity as administrative agent under the Prepetition Financing Agreement.

"**Agreement**" has the meaning set forth in the preamble to this Agreement and, for the avoidance of doubt, includes all the exhibits, annexes, and schedules hereto in accordance with Section 11.02 (including the Plan).

"**Agreement Effective Date**" means the date on which the conditions set forth in Section 2 have been satisfied or waived by the appropriate Party or Parties in accordance with this Agreement.

"**Agreement Effective Period**" means, with respect to a Party, the period from the Agreement Effective Date to the Termination Date applicable to that Party.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court in which the Chapter 11 Cases are commenced or another United States Bankruptcy Court with jurisdiction over the Chapter 11 Cases.

"**Bar Date Motion**" means any motion seeking to establish, with respect to any particular Claim, the applicable date as the last day for filing proofs of claim in the PCo Cases for such Claim.

"**Bar Date Order**" means an order by the Bankruptcy Court approving a Bar Date Motion.

"**Business Day**" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

"**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

"**Chapter 11 Cases**" has the meaning set forth in the recitals to this Agreement.

"**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Company Claims/Interests**" means any Claim against, or Interest in, a Company Party, including the Prepetition Term Loan Claims, the Prepetition MPT Convertible Notes Claims, and the Series A-1 Preferred Units.

"**Company Parties**" has the meaning set forth in the recitals to this Agreement.

"**Confirmation Order**" means the confirmation order with respect to the Plan.

"**Consenting Term Loan Lender Termination Events**" means the events upon which this Agreement may be terminated by the Consenting Term Loan Lenders in accordance with Section 9.01 hereto.

"**Consenting Term Loan Lenders**" has the meaning set forth in the preamble to this Agreement.

"**Consenting Noteholder Termination Events**" means the events upon which this Agreement may be terminated by the Consenting Noteholders in accordance with Section 9.02 hereto.

"**Consenting Noteholders**" has the meaning set forth in the preamble to this Agreement.

"**Debtors**" has the meaning set forth in the recitals to this Agreement.

"**Definitive Documents**" means the documents listed in Section 3 of this Agreement.

"**DIP Orders**" means any order approving debtor-in-possession financing for the Company Parties.

"**Disclosure Statement**" means the related disclosure statement with respect to the Plan, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved or ratified by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"**Disclosure Statement Order**" means the order approving the Disclosure Statement.

"**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"**Execution Date**" has the meaning set forth in the preamble to this Agreement.

"**First Day Pleadings**" means the first-day pleadings that the Company Parties determine are necessary or desirable to file.

"**Interests**" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Company Party and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Company Party.

"**Joint Administration Motion**" has the meaning set forth in Section 4.01 of this Agreement.

"**Joint Administration Order**" means an order by the Bankruptcy Court approving the Joint Administration Motion.

"**Law**" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

"**Parties**" has the meaning set forth in the preamble to this Agreement.

"**Payoff Letter**" means any letter signed on or after the date hereof by the relevant Company Parties, Prepetition Term Loan Lenders and the other parties thereto in satisfaction of all obligations under the Prepetition Financing Agreement as in effect on the Execution Date.

"**Petition Date**" means the first date any of the Company Parties commences a Chapter 11 Case.

"**Plan**" means any chapter 11 plan  filed by the Company Parties in the PCo Cases.

"**Plan Effective Date**" means the occurrence of the effective date of the Plan according to its terms.

"**Plan Supplement**" means the compilation of documents and forms and/or term sheets of documents, agreements, schedules, and exhibits to the Plan that will be filed by the Company Parties with the Bankruptcy Court.  The Company Parties shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement as set forth in this Plan and in accordance with this Agreement.

"**Prepetition Financing Agreement**" means that certain Financing Agreement, dated as of May 23, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), by and between Prospect Medical Holdings, Inc., PHP Holdings, LLC, Prospect Intermediate Holdings, LLC, Prospect Physician Holdings, Inc., the other loan parties thereto, the lenders from time to time party thereto, and the Administrative Agent, together with a note or other evidence of indebtedness (including the Subordinated Secured Note) issued in exchange for the Claims thereunder.

"**Prepetition MPT Convertible Notes**" means that certain Convertible Promissory Note, dated as of May 23, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), by and among Parent, as issuer, and MPT Picasso Investors TRS, LLC, as holder.

"**Prepetition MPT Convertible Notes Claims**" means any Claim on account of the Prepetition MPT Convertible Notes.

"**Prepetition Term Loan**" means loans or other indebtedness outstanding under the Prepetition Financing Agreement.

"**Prepetition Term Loan Claims**" means any Claim on account of the Prepetition Term Loans.

"**Prepetition Term Loan Lenders**" means the lenders party to the Prepetition Financing Agreement.

"**Required Consenting Noteholders**" means Consenting Noteholders that hold, in the aggregate, at least 50.01% in principal amount outstanding of all Prepetition MPT Convertible Notes Claims held by the Consenting Noteholders as of the date of determination.

"**Required Consenting Stakeholders**" means, collectively, the Required Consenting Noteholders and the Required Consenting Term Loan Lenders.

"**Required Consenting Term Loan Lenders**" means, as of the relevant date, Consenting Term Loan Lenders holding at least 50.01% of the aggregate outstanding principal amount of Prepetition Term Loans that are held by Consenting Term Loan Lenders.

"**Restructuring Transactions**" has the meaning set forth in the recitals to this Agreement.

"**Rules**" means Rule 501(a)(l), (2), (3), and (7) of the Securities Act.

"**Securities Act**" means the Securities Act of 1933, as amended.

"**Series A-1 Preferred Units**" has the meaning ascribed to such term in that certain Fifth Amended and Restated Limited Liability Company Agreement for PHP Holdings, LLC (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

"**Solicitation Package**" has the meaning ascribed to such term in the Disclosure Statement.

"**Subordinated Secured Note**" has the meaning set forth in Section 2(e).

"**Termination Date**" means the date on which termination of this Agreement as to a Party is effective in accordance with Sections 9.01, 9.02, 9.03, 9.04, or 9.05.

"**Transfer**" means to sell, resell, reallocate, use, pledge, assign, transfer, hypothecate, participate, donate or otherwise encumber or dispose of, directly or indirectly (including through derivatives, options, swaps, pledges, forward sales or other transactions).

1.02.    <u>Interpretation</u>. For purposes of this Agreement:

(a)    in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(b)    capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

(c)    unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)     unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; *provided* that any capitalized terms herein which are defined with reference to another agreement, are defined with reference to such other agreement as of the date of this Agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the date hereof;

(e)     unless otherwise specified, all references herein to "Sections" are references to Sections of this Agreement;

(f)     the words "herein," "hereof," and "hereto" refer to this Agreement in its entirety rather than to any particular portion of this Agreement;

(g)     captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Agreement;

(h)     references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws;

(i)     the use of "include" or "including" is without limitation, whether stated or not; and

(j)     the phrase "counsel to the Consenting Stakeholders" refers in this Agreement to each counsel specified in Section 11.10 other than counsel to the Company Parties.

**Section 2.** *Effectiveness of this Agreement*. This Agreement shall become effective and binding upon each of the Parties at 12:00 a.m., prevailing Central Time, on the Agreement Effective Date, which is the date on which all of the following conditions have been satisfied or waived in accordance with this Agreement:

(a)     each of the Company Parties shall have executed and delivered counterpart signature pages of this Agreement to counsel to each of the Parties;

(b)     holders of at least two thirds (66.7%) of the aggregate outstanding principal amount of Prepetition Term Loans shall have executed and delivered counterpart signature pages of this Agreement;

(c)     holders of at least two thirds (66.7%) of the aggregate outstanding principal amount of the Prepetition MPT Convertible Notes shall have executed and delivered counterpart signature pages of this Agreement to counsel of each of the Parties;

(d)     the Company Parties shall have paid to the Consenting Noteholders the paydown required to be made under that certain Paydown and Partial Lien Release Letter re Phase I Convertible Note, dated on or around July 1, 2025;

(e)     on or before July 1, 2025, as required under the Payoff Letter, the Company Parties shall have paid $519,566,136.88 to the Administrative Agent and, in exchange for the equivalent

amount of outstanding obligations, issued to the Prepetition Term Loan Lenders a subordinated secured promissory note in an aggregate amount of $14,996,396.01, which shall be junior to the Prepetition MPT Convertible Note Claims (such note, the "**Subordinated Secured Note**"); and

(f)     counsel to the Company Parties shall have given notice to counsel to the Consenting Stakeholders in the manner set forth in Section 11.10 hereof (by email or otherwise) that the other conditions to the Agreement Effective Date set forth in this Section 2 have occurred.

**Section 3.     *Definitive Documents*.**

3.01.   The Definitive Documents governing the Restructuring Transactions (including any modifications, restatements, supplements or amendments to any of them) shall include the following: (a) the Plan; (b) the Confirmation Order; (c) the Disclosure Statement; (d) the Disclosure Statement Order and documents comprising the Solicitation Package; (e) the Plan Supplement; (f) the Bar Date Motion and Bar Date Order; (g) the DIP Orders and any motions seeking debtor-in-possession financing for the Company Parties; (h) the First Day Pleadings and all orders sought pursuant thereto; and (i) any such other agreements and documentation ancillary to the documents specified in the foregoing clauses (a) through (i) that are necessary to consummate and document the Restructuring Transactions; *provided* that each of the agreements and documentation described in clause (i) shall be consistent with this Agreement in all respects.

3.02.   The Definitive Documents (including any modifications, restatements, supplements or amendments to any of them) not executed or in a form attached to this Agreement as of the Execution Date remain subject to negotiation and completion. Upon completion, the Definitive Documents and every other document, deed, agreement, filing, notification, letter or instrument related to the Restructuring Transactions shall contain terms, conditions, representations, warranties, and covenants consistent with the terms of this Agreement, as they may be modified, amended, or supplemented in accordance with Section 10. Further, the Definitive Documents not executed or in a form attached to this Agreement as of the Execution Date shall otherwise be in form and substance reasonably acceptable to the applicable Parties.

**Section 4.     *Chapter 11 Cases*.**

4.01.   <u>Joint Administration</u>. No later than one (1) calendar day after the Petition Date, the Company Parties shall file a motion seeking joint administration of the PCo Cases with the HCo Cases (such motion, the "**Joint Administration Motion**").

4.02.   <u>PBGC Payment</u>. No later than one (1) calendar day after the Petition Date, the Company Parties shall file a motion or such other proceeding necessary to seek a final order ratifying and approving the Modified PBGC Payment (as defined in the Agreement of Waiver and Release with the Pension Benefit Guaranty Corporation ("**PBGC**")) and fully and finally releasing any and all claims or causes of action the Company Parties may have against the PBGC, including without limitation any claims arising under chapter 5 of the Bankruptcy Code and any claims relating to the Modified PBGC Payment). This covenant shall be waivable by the Required Consenting Noteholders acting alone in their discretion.

4.03.   <u>The Plan</u>. Upon entry of the Joint Administration Order, the Company Parties shall file and seek approval of a Plan that contemplates the wind-down of each of the Company Parties.

Such Plan may be consolidated with an amended Plan for the Debtors, *provided that* nothing herein shall require support of any particular plan, or the terms of any plan, for the Debtors (other than the Company Parties).

     (a)    The Plan shall provide the following:

          (i)    The Consenting Noteholders, in respect of the Prepetition MPT Convertible Note Claims, which such claims shall be deemed Allowed Claims (as defined in the Plan), shall (i) receive all residual assets of the Company Parties on the Plan Effective Date (or as soon as reasonably practicable thereafter), including the proceeds of any causes of action of the Company Parties, and (ii) shall be Released Parties (as defined in the Plan);

          (ii)    The Consenting Term Loan Lenders shall be Released Parties (as defined in the Plan);

          (iii)    No liabilities shall be imposed on the Consenting Stakeholders under the Plan; and

          (iv)    Unless the PBGC has already been released by the Company Parties, the PBGC shall be a Released Party under the Plan.

     (b)    Each Consenting Term Loan Lender waives its right to any distributions under the Plan on account of the Prepetition Term Loan Claims, including, without limitation, the Subordinated Secured Note.

     (c)    Each Consenting Stakeholder that is entitled to vote to accept or reject the Plan pursuant to its terms, severally and not jointly, agrees in respect of itself that it shall, subject to receipt by such Consenting Stakeholder of the Solicitation Package:

          (i)    support all of the Company Party and third-party releases, injunctions, discharge, indemnity, and exculpation provisions provided in the Plan, to the extent consistent with applicable law;

          (ii)    provided that its vote has been properly solicited pursuant to applicable Law and the Plan comports with the consent rights of such Consenting Stakeholder, and subject to receipt of the Disclosure Statement and Bankruptcy Court approval of the same, vote each of its Company Claims/Interests to accept the Plan by delivering its duly executed and completed ballot accepting the Plan on a timely basis following the commencement of the solicitation of the Plan and its actual receipt of the Solicitation Package and the ballot; and

          (iii)    not change, withdraw, amend, or revoke (or cause to be changed, withdrawn, amended, or revoked) any vote or election referred to in clauses (i) and (ii) and above.

     (d)    During the Agreement Effective Period, each Consenting Stakeholder, severally, and not jointly, in respect of itself and each of its Company Claims/Interests, will support, and will not directly or indirectly object to, delay, impede, or take any other action to interfere with any motion or other pleading or document filed by a Company Party in the Bankruptcy Court that is

consistent with this Agreement, unless such Consenting Stakeholder in good faith disputes that such motion, other pleading or document is consistent with this Agreement.

(e)     Notwithstanding any provision hereof, nothing in this Agreement shall (i) impose any obligation of any kind on any Consenting Stakeholder with respect to any portion of the Plan that relates to any Debtor other than the Company Parties or the voting in respect of the Plan of any Claim or interest against any Debtor other than the Company Parties, or (ii) require any Consenting Stakeholder to provide or consent to any post-petition financing for the Company Parties or to any particular budget for such post-petition financing.

**Section 5.     *Releases.***

5.01.     <u>Release by Consenting Term Loan Lenders</u>.  For good and valuable consideration, the adequacy of which is hereby confirmed, effective as of the Agreement Effective Date, each of the Consenting Term Loan Lenders, shall be deemed to irrevocably and unconditionally release and discharge the Company Parties and each of their directors and officers from any and all Claims, Interests, liens, security interests, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Consenting Term Loan Lenders, that the Consenting Term Loan Lenders would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Company Parties, the conduct of the Company Parties' business, the Restructuring Transactions, the purchase, sale or rescission of the purchase or sale of any security of the Company Parties, any other transaction involving the restructuring of claims or interests before or during the Chapter 11 Cases, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Agreement Effective Date.

5.02.     <u>Release by the Consenting Noteholders</u>.  For good and valuable consideration, the adequacy of which is hereby confirmed, effective as of the Agreement Effective Date, each of the Consenting Noteholders shall be deemed to irrevocably and unconditionally release and discharge the Company Parties and each of their directors and officers from any and all Claims, Interests, liens, security interests, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Consenting Noteholders, that the Consenting Noteholders would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Company Parties, the conduct of the Company Parties' business, the Restructuring Transactions, the purchase, sale or rescission of the purchase or sale of any security of the Company Parties, any other transaction involving the restructuring of claims or interests before or during the Chapter 11 Cases, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Agreement Effective Date, *provided that* this release shall not apply or extend to the

Prepetition MPT Convertible Notes Claims or the Series A-1 Preferred Units and no rights or entitlements under the Prepetition MPT Convertible Notes Claims or the Series A-1 Preferred Units shall be affected or impaired by this Agreement.

5.03.    Release by the Company Parties.    For good and valuable consideration, the adequacy of which is hereby confirmed, effective as of the Agreement Effective Date, the Company Parties shall be deemed to irrevocably and unconditionally release and discharge the Consenting Stakeholders and their affiliates from any and all Claims, Interests, liens, security interests, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Company Parties, that the Company Parties would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Company Parties, the conduct of the Company Parties' business, the Restructuring Transactions, the purchase, sale or rescission of the purchase or sale of any security of the Company Parties, any other transaction involving the restructuring of claims or interests before or during the Chapter 11 Cases, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Agreement Effective Date.

**Section 6.    *Subordinated Secured Note Collateral.*** The Consenting Term Loan Lenders consent to the Debtors' use of the Subordinated Secured Note collateral, as set forth in the Subordinated Secured Note, for the payment of the Debtors' professional fees.

**Section 7.    *Representations and Warranties of Consenting Stakeholders***. Each Consenting Stakeholder severally, and not jointly, represents and warrants that, as of the date such Consenting Stakeholder executes and delivers this Agreement and as of the Plan Effective Date:

(a)    it is the beneficial or record owner of the face amount of the Company Claims/Interests or is the nominee, investment manager, or advisor for beneficial holders of the Company Claims/Interests reflected in, and, having made reasonable inquiry, is not the beneficial or record owner of any Company Claims/Interests other than those reflected in, such Consenting Stakeholder' signature page to this Agreement (as may be updated pursuant to Section 10);

(b)    it has the full power and authority to act on behalf of, vote and consent to matters concerning, such Company Claims/Interests;

(c)    such Company Claims/Interests are free and clear of any pledge, lien, security interest, charge, claim, equity, option, proxy, voting restriction, right of first refusal, or other limitation on disposition, transfer, or encumbrances of any kind, that would adversely affect in any way such Consenting Stakeholder's ability to perform any of its obligations under this Agreement at the time such obligations are required to be performed; and

(d)    it has the full power to vote, approve changes to, and transfer all of its Company Claims/Interests referable to it as contemplated by this Agreement subject to applicable Law.

**Section 8.** ***Mutual Representations, Warranties, and Covenants***. Each of the Parties represents, warrants, and covenants to each other Party, as of the date such Party executed and delivers this Agreement, on the Plan Effective Date:

(a)     it is validly existing and in good standing under the Laws of the state of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable Laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability;

(b)     except as expressly provided in this Agreement, the Plan, and the Bankruptcy Code, no consent or approval is required by any other person or entity in order for it to effectuate the Restructuring Transactions contemplated by, and perform its respective obligations under, this Agreement;

(c)     the entry into and performance by it of, and the transactions contemplated by, this Agreement do not, and will not, conflict in any material respect with any Law or regulation applicable to it or with any of its articles of association, memorandum of association or other constitutional documents;

(d)     except as expressly provided in this Agreement, it has (or will have, at the relevant time) all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to effectuate the Restructuring Transactions contemplated by, and perform its respective obligations under, this Agreement; and

(e)     except as expressly provided by this Agreement, it is not party to any restructuring or similar agreements or arrangements with the other Parties to this Agreement that have not been disclosed to all Parties to this Agreement.

**Section 9.** ***Termination Events***.

9.01.   <u>Consenting Term Loan Lender Termination Events</u>.  With respect to the Consenting Term Loan Lenders, this Agreement may be terminated by the Required Consenting Term Loan Lenders by the delivery to all Parties of a written notice in accordance with Section 11.10 hereof upon the occurrence of the following events:

(a)     the breach in any material respect by a Company Party or a Consenting Noteholder of any of the representations, warranties, or covenants of the Company Parties or a Consenting Noteholder, as applicable, set forth in this Agreement that (i) is adverse to the Consenting Term Loan Lenders seeking termination pursuant to this provision and (ii) remains uncured for ten (10) Business Days after such terminating Consenting Term Loan Lenders transmit a written notice in accordance with Section 11.10 hereof detailing any such breach;

(b)     the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final, non-appealable ruling or order that (i) enjoins the consummation of a material portion of the Restructuring Transactions and (ii) remains in effect for fifteen (15) Business Days after such terminating Consenting Term Loan Lenders transmit a written notice in accordance with Section 11.10 hereof detailing any such issuance; *provided* that

this termination right may not be exercised by any Party that sought or requested such ruling or order in contravention of any obligation set out in this Agreement;

(c)    the Bankruptcy Court enters an order denying confirmation of the Plan;

(d)    the Bankruptcy Court grants relief that is inconsistent in any material respect with this Agreement, the Definitive Documents, or the Restructuring Transactions, and such inconsistent relief is not stayed, reversed, vacated, or modified to be consistent with this Agreement within seven (7) Business Days after the date of such issuance; except if such relief is granted pursuant to a motion filed by any Consenting Term Loan Lender in contravention of any obligation set out in this Agreement;

(e)    the filing by any Company Party of any Definitive Document, motion, or pleading with the Bankruptcy Court that is not consistent in all material respects with this Agreement, and such filing is not withdrawn (or, in the case of a motion that has already been approved by an order of the Bankruptcy Court at the time the Company Parties are provided with such notice, such order is not stayed, reversed, or vacated) within three (3) Business Days of such filing; *provided* that any such filing shall not trigger a Consenting Term Loan Lender Termination Event if the Company Party provides a draft of such Definitive Document, motion, or pleading to counsel for the Consenting Term Loan Lenders at least two (2) Business Days prior to such filing, and counsel for the Consenting Term Loan Lenders provides written notice that it does not object to such filing (with email being sufficient) prior to such filing;

(f)    the Bankruptcy Court enters an order terminating the Company Parties' exclusive right to file and solicit acceptances of a chapter 11 plan; except if such relief is granted pursuant to a motion filed by any Consenting Term Loan Lender in contravention of any obligation set out in this Agreement; or

(g)    the entry of an order by the Bankruptcy Court, or the filing of a motion or application by any Company Party seeking an order (without the prior written consent of the Required Consenting Term Loan Lenders, not to be unreasonably withheld), (i) converting one or more of the Chapter 11 Cases of a Company Party to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code or a trustee in one or more of the Chapter 11 Cases of a Company Party, or (iii) rejecting this Agreement.

9.02.    <u>Consenting Noteholder Termination Events</u>.    With respect to the Consenting Noteholders, this Agreement may be terminated by the Required Consenting Noteholders by the delivery to all Parties of a written notice in accordance with Section 11.10 hereof upon the occurrence of the following events:

(a)    the breach in any material respect by a Company Party or a Consenting Term Loan Lender of any of the representations, warranties, or covenants of the Company Parties or a Consenting Term Loan Lender, as applicable, set forth in this Agreement that (i) is adverse to the Consenting Noteholders seeking termination pursuant to this provision and (ii) remains uncured for ten (10) Business Days after such terminating Consenting Noteholders transmit a written notice in accordance with Section 11.10 hereof detailing any such breach;

(b)     the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final, non-appealable ruling or order that (i) enjoins the consummation of a material portion of the Restructuring Transactions and (ii) remains in effect for fifteen (15) Business Days after such terminating Consenting Noteholders transmit a written notice in accordance with Section 11.10 hereof detailing any such issuance; *provided* that this termination right may not be exercised by any Party that sought or requested such ruling or order in contravention of any obligation set out in this Agreement;

(c)     the Bankruptcy Court enters an order denying confirmation of the Plan;

(d)     the Bankruptcy Court grants relief that is inconsistent in any material respect with this Agreement, the Definitive Documents, or the Restructuring Transactions, and such inconsistent relief is not stayed, reversed, vacated, or modified to be consistent with this Agreement within seven (7) Business Days after the date of such issuance; except if such relief is granted pursuant to a motion filed by any Consenting Noteholders in contravention of any obligation set out in this Agreement;

(e)     the filing by any Company Party of any Definitive Document, motion, or pleading with the Bankruptcy Court that is not consistent in all material respects with this Agreement, and such filing is not withdrawn (or, in the case of a motion that has already been approved by an order of the Bankruptcy Court at the time the Company Parties are provided with such notice, such order is not stayed, reversed, or vacated) within three (3) Business Days of such filing; <u>provided</u> that any such filing shall not trigger a Consenting Noteholder Termination Event if the Company Party provides a draft of such Definitive Document, motion, or pleading to counsel for the Consenting Noteholders at least two (2) Business Days prior to such filing, and counsel for the Consenting Noteholders provides written notice that it does not object to such filing (with email being sufficient) prior to such filing;

(f)     the Bankruptcy Court enters an order terminating the Company Parties' exclusive right to file and solicit acceptances of a chapter 11 plan; except if such relief is granted pursuant to a motion filed by any Consenting Noteholders in contravention of any obligation set out in this Agreement;

(g)     any of the Company Parties (i) file any motion seeking to avoid, disallow, subordinate, or recharacterize any Prepetition MPT Convertible Notes Claim or (ii) support any application, adversary proceeding, or Causes of Action referred to in the immediately preceding clause (i) filed by a third party, or consents to the standing or any such third party to bring such application, adversary proceeding, or Causes of Action;

(h)     any of the Company Parties takes any action inconsistent with the *Order (A) Approving Settlement with MPT and Junior DIP and (B) Granting Related Relief* (Case No. 25-80002, Dkt. 1287) or the Settlement and Support Agreement attached thereto as Exhibit 1, including any action to prevent or impede MPT from receiving any of the benefits or consideration provided by the Settlement and Support Agreement; or

(i)     the entry of an order by the Bankruptcy Court, or the filing of a motion or application by any Company Party seeking an order (without the prior written consent of the

Required Consenting Noteholders), (i) converting one or more of the Chapter 11 Cases of a Company Party to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code or a trustee in one or more of the Chapter 11 Cases of a Company Party, or (iii) rejecting this Agreement.

9.03.  <u>Company Party Termination Events</u>. Any Company Party may terminate this Agreement as to all Parties upon prior written notice to all Parties in accordance with Section 11.10 hereof upon the occurrence of any of the following events:

(a)  the breach in any material respect by one or more of the Consenting Stakeholders of any of the representations, warranties, or covenants of such Consenting Stakeholders set forth in this Agreement that (i) is adverse to the Company Parties and (ii) remains uncured for a period of ten (10) Business Days after such terminating Company Parties transmit a written notice in accordance with Section 11.10 hereof detailing any such breach to the breaching Consenting Stakeholder;

(b)  the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final, non-appealable ruling or order that (i) enjoins the consummation of a material portion of the Restructuring Transactions and (ii) remains in effect for ten (10) Business Days after such terminating Company Party transmits a written notice in accordance with Section 11.10 hereof detailing any such issuance; *provided* that this termination right shall not apply to or be exercised by any Company Party that sought or requested such ruling or order in contravention of any obligation or restriction set out in this Agreement; or

(c)  the Bankruptcy Court enters an order denying confirmation of the Plan.

9.04.  <u>Mutual Termination</u>. This Agreement, and the obligations of all Parties hereunder, may be terminated by mutual written agreement among all of the following: (a) the Required Consenting Term Loan Lenders; (b) the Required Consenting Noteholders; and (c) each Company Party.

9.05.  <u>Automatic Termination</u>. This Agreement shall terminate automatically without any further required action or notice immediately after the Plan Effective Date.

9.06.  <u>Effect of Termination</u>. Upon the occurrence of a Termination Date as to a Party, this Agreement shall be of no further force and effect as to such Party and each Party subject to such termination shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions, whether with respect to the Restructuring Transactions or otherwise, that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all Claims or causes of action. Upon the occurrence of a Termination Date prior to the Confirmation Order being entered by a Bankruptcy Court, any and all consents or ballots tendered by the Parties subject to such termination before a Termination Date shall be deemed, for all purposes, to be null and void from the first instance and shall not be considered or otherwise used in any manner by the Parties in connection with the Restructuring Transactions and this Agreement or otherwise.  Nothing in this Agreement shall be

construed as prohibiting a Company Party or any of the Consenting Stakeholders from contesting whether any such termination is in accordance with the terms of this Agreement or to seek enforcement of any rights under this Agreement that arose or existed before a Termination Date. Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict (a) any right of any Company Party or the ability of any Company Party to protect and reserve its rights (including rights under this Agreement), remedies, and interests, including its claims against any Consenting Stakeholder, or (b) any right of any Consenting Stakeholder, or the ability of any Consenting Stakeholder, to protect and preserve its rights (including rights under this Agreement), remedies, and interests, including its claims against any Company Party or any Consenting Stakeholder.

**Section 10.** *Amendments and Waivers*.

(a) This Agreement, including the exhibits hereto, may not be modified, amended, or supplemented, and no condition or requirement of this Agreement may be waived, in any manner except in accordance with this Section 10.

(b) This Agreement may be modified, amended, or supplemented, or a condition or requirement of this Agreement may be waived, in a writing (email being sufficient) signed by: (a) each Company Party; (b) the Required Consenting Term Loan Lenders; and (c) the Required Consenting Noteholders; *provided*, *however*, that if the proposed modification, amendment, waiver, or supplement has a material, disproportionate, and adverse effect on any of the Company Claims/Interests held by a Consenting Stakeholder, then the consent of each such affected Consenting Stakeholder shall also be required to effectuate such modification, amendment, waiver or supplement.

(c) Any proposed modification, amendment, waiver or supplement that does not comply with this Section 10 shall be ineffective and void *ab initio.*

(d) The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy under this Agreement shall operate as a waiver of any such right, power or remedy or any provision of this Agreement, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise of such right, power or remedy or the exercise of any other right, power or remedy. All remedies under this Agreement are cumulative and are not exclusive of any other remedies provided by Law.

**Section 11.** *Miscellaneous*.

11.01. Acknowledgement. Notwithstanding any other provision herein, this Agreement is not and shall not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance of a plan of reorganization for purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise. Any such offer or solicitation will be made only in compliance with all applicable securities Laws, provisions of the Bankruptcy Code, and/or other applicable Law.

11.02. <u>Exhibits Incorporated by Reference; Conflicts</u>. Each of the exhibits, annexes, signatures pages, and schedules attached hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules. In the event of any inconsistency between this Agreement (without reference to the exhibits, annexes, and schedules hereto) and the exhibits, annexes, and schedules hereto, this Agreement (without reference to the exhibits, annexes, and schedules thereto) shall govern.

11.03. <u>Further Assurances</u>. Subject to the other terms of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the Restructuring Transactions, as applicable.

11.04. <u>Complete Agreement</u>. Except as otherwise explicitly provided herein, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, among the Parties with respect thereto.

11.05. <u>GOVERNING LAW; SUBMISSION TO JURISDICTION: SELECTION OF FORUM</u>. THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement, to the extent possible, in the Bankruptcy Court, and solely in connection with claims arising under this Agreement: (a) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court; (b) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (c) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto.

11.06. <u>TRIAL BY JURY WAIVER</u>. EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11.07. <u>Execution of Agreement</u>. This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Except as expressly provided in this Agreement, each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

11.08. <u>Rules of Construction</u>. This Agreement is the product of negotiations among the Company Parties and the Consenting Stakeholders, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Company

Parties and the Consenting Stakeholders were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel.

11.09. <u>Successors and Assigns; Third Parties</u>. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. There are no third party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity.

11.10. <u>Notices</u>. All notices hereunder shall be deemed given if in writing and delivered, by electronic mail, courier, or registered or certified mail (return receipt requested), to the following addresses (or at such other addresses as shall be specified by like notice):

(a)      if to a Company Party, to:

PHP Holdings, LLC
3824 Hughes Ave.,
Culver City, CA 90232
Attention: Paul Rundell, Chief Restructuring Officer
E-mail: prundell@alvarezandmarsal.com

with copies to:

Sidley Austin LLP
Attn: Thomas Califano, Maegan Quejada
757 7th Avenue
New York, NY 10019
E-mail: tom.califano@sidley.com; mquejada@sidley.com

(b)      if to a Consenting Term Loan Lender, to:

Centerbridge Credit CS, L.P.
375 Park Avenue
New York, NY 10152
Attention: Shanshan Cao
Email: scao@centerbridge.com

Blue Torch Capital LP
150 East 58th Street, 39th Floor
New York, NY 10155
Attention: Dermott O'Flanagan
Email: doflanagan@bluetorchcapital.com

With a copy to:
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704

Attention: Leonard Klingbaum
Email: Leonard.Klingbaum@ropesgray.com

Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Attention: Milap Patel
Email: Milap.Patel@ropesgray.com

(c)     if to a Consenting Noteholder, to:

MPT Picasso Investors TRS, LLC
c/o MPT Operating Partnership, L.P.
1000 Urban Center Drive, Suite 501
Birmingham, Alabama 35242
Attention: Legal Department
Email: legal@medicalpropertiestrust.com

With a copy to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019 A
Attention: Emil A. Kleinhaus and Neil M. Snyder
Email: EAKleinhaus@WLRK.com; NMSnyder@wlrk.com

Any notice given by delivery, mail, or courier shall be effective when received.

11.11.   Independent Due Diligence and Decision Making. Each Consenting Stakeholder hereby confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions, and prospects of the Company Parties.

11.12.   Enforceability of Agreement. Each of the Parties to the extent enforceable waives any right to assert that the exercise of termination rights under this Agreement is subject to the automatic stay provisions of the Bankruptcy Code, and expressly stipulates and consents hereunder to the prospective modification of the automatic stay provisions of the Bankruptcy Code for purposes of exercising termination rights under this Agreement, to the extent the Bankruptcy Court determines that such relief is required.

11.13.   Waiver. If the Restructuring Transactions are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or the payment of damages to which a Party may be entitled under this Agreement.

11.14. _Specific Performance_. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

11.15. _Several, Not Joint, Claims_. Except where otherwise specified, the agreements, representations, warranties, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

11.16. _Severability and Construction_. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

11.17. _Remedies Cumulative_. All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at Law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

11.18. _Capacities of Consenting Stakeholder_. Each Consenting Stakeholder has entered into this agreement on account of all Company Claims/Interests that it holds (directly or through discretionary accounts that it manages or advises) and, except where otherwise specified in this Agreement, shall take or refrain from taking all actions that it is obligated to take or refrain from taking under this Agreement with respect to all such Company Claims/Interests.

11.19. _Survival_. Notwithstanding (i) any Transfer of any Company Claims/Interests in accordance with this Agreement or (ii) the termination of this Agreement in accordance with its terms, the agreements and obligations of the Parties in Section 11 shall survive such Transfer and/or termination and shall continue in full force and effect for the benefit of the Parties in accordance with the terms hereof and thereof.

11.20. _Email Consents_. Where a written consent, acceptance, approval, or waiver is required pursuant to or contemplated by this Agreement, pursuant to Section 3.02, Section 10, or otherwise, including a written approval by any Party, such written consent, acceptance, approval, or waiver shall be deemed to have occurred if, by agreement between counsel to the Parties submitting and receiving such consent, acceptance, approval, or waiver, it is conveyed in writing (including electronic mail) between each such counsel without representations or warranties of any kind on behalf of such counsel.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the day and year first above written.

[_Remainder of the page intentionally left blank._]

**Company Parties' Signature Page to**
**the Restructuring Support Agreement**

**PROSPECT INTERMEDIATE HOLDINGS,**
**LLC,**

By: _____
    Name: Von Crockett
    Title: Senior Vice President

**PHP HOLDINGS, LLC**

By: Prospect Healthcare Facilities Management,
LLC, its Manager

By: _____
Name:  Von Crockett
Title:   Senior Vice President

**PROSPECT MEDICAL SYSTEMS, LLC**

By: _____
Name:  Von Crockett
Title:   Senior Vice President

**PROSPECT WEST COAST ACO HOLDINGS,**
**LLC**

By: _____
Name:  Von Crockett
Title:   Senior Vice President

**PROSPECT ACO, LLC**

By: _____
Name:  Von Crockett
Title:   Senior Vice President

**RIGHTRX**

By: _____ Von Crockett

Name: Von Crockett

Title: Senior Vice President


**PROSPECT HEALTH SERVICES AZ, LLC**

By: _____ Von Crockett

Name: Von Crockett

Title: Senior Vice President


**PROSPECT MEDICAL GROUP AZ, LLC**

By: _____ Von Crockett

Name: Von Crockett

Title: Senior Vice President


**PROSPECT PROVIDER GROUP TX, INC.**

By: _____ Von Crockett

Name: Von Crockett

Title: Senior Vice President


**PROMED HEALTH CARE**
**ADMINISTRATORS**

By: _____ Von Crockett

Name: Von Crockett

Title: Senior Vice President


**PROSPECT HEALTH SERVICES TX, INC.**

By: _____ Von Crockett

Name: Von Crockett

Title: Senior Vice President


Address:                    3824 Hughes Avenue, Culver City, CA 90232

E-mail address(es):    The Company Parties' email addresses are set forth in Section 11.10 of the Agreement.

**MPT PICASSO INVESTORS TRS, LLC**

By: MPT Operating Partnership, L.P., its sole member

_____

Name: R. Steven Hamner
Title: Executive Vice President and CFO

Address:
c/o MPT Operating Partnership, L.P.
1000 Urban Center Drive, Suite 501
Birmingham, Alabama 35242
E-mail address(es): shamner@medicalpropertiestrust.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BLUE TORCH CREDIT OPPORTUNITIES FUND II LP**, as a Lender
By: Blue Torch Credit Opportunities GP II LLC, its general partner
By: KPG BTC Management LLC, its sole member

Signed by:

Kevin Genda

4643C065D4751492

Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com



**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BLUE TORCH CREDIT OPPORTUNITIES FUND III LP**
By: Blue Torch Credit Opportunities GP III LLC, its general partner
By: KPG BTC Management LLC, its sole member

Signed by:



4643C0504751492

Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BLUE TORCH CREDIT OPPORTUNITIES UNLEVERED FUND III LP**
By: Blue Torch Credit Opportunities GP III LLC, its general partner
By: KPG BTC Management LLC, its managing member

Signed by:

Kevin Genda
4643C0E504751492
Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com



**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BLUE TORCH OFFSHORE CREDIT OPPORTUNITIES MASTER FUND II LP**
By: Blue Torch Offshore Credit Opportunities GP II LLC, its general partner
By: KPG BTC Management LLC, its sole member



Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC HOLDINGS FUND II LLC**
By: Blue Torch Credit Opportunities Fund II LP, its sole member
By: Blue Torch Credit Opportunities GP II LLC, its general partner
By: KPG BTC Management LLC, its sole member

Signed by:



Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**


**BTC HOLDINGS FUND III LLC**
By: Blue Torch Credit Opportunities Fund III LP, its Sole Member
By: Blue Torch Credit Opportunities GP III LLC, its General Partner
By: KPG BTC Management LLC, its sole member



Name: Kevin Genda
Title:  Managing Member


Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC HOLDINGS FUND III-B LLC**
By: Blue Torch Credit Opportunities Fund III LP, its Sole Member
By: Blue Torch Credit Opportunities GP III LLC, its General Partner
By: KPG BTC Management LLC, its sole member

Signed by:

Kevin Genda
_____
4643C0E9475149?

Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com



**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC HOLDINGS KRS FUND LLC**
By: Blue Torch Credit Opportunities KRS Fund LP, its sole member
By: Blue Torch Credit Opportunities KRS GP LLC, its general partner
By: KPG BTC Management LLC, its sole member

Signed by:



Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC HOLDINGS SBAF FUND LLC**
By: Blue Torch Credit Opportunities SBAF Fund LP, its sole member
By: Blue Torch Credit Opportunities SBAF GP LLC, its general partner
By: KPG BTC Management LLC, its sole member

Signed by:

Kevin Genda
———— 4643C0594751492
Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com



Docusign Envelope ID: A6968F00-CF4C-4D8B-9805-629374F5CEF4

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC HOLDINGS SC FUND LLC**
By: Blue Torch Credit Opportunities SC Master Fund LP, its sole member
By: Blue Torch Credit Opportunities SC GP LLC, its general partner
By: KPG BTC Management LLC, its sole member



Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC OFFSHORE HOLDINGS FUND II-D LLC**
By: Blue Torch Offshore Credit Opportunities Master Fund II LP, its Sole Member
By: Blue Torch Offshore Credit Opportunities GP II LLC, its General Partner
By: KPG BTC Management LLC, its sole member

Signed by:

Kevin Genda
4643C0E504751492

Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com



Docusign Envelope ID: A6968F00-CF4C-4D8B-9805-629374F5CEF4

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC OFFSHORE HOLDINGS FUND III-B LLC**
By: Blue Torch Offshore Credit Opportunities Master Fund III LP, its sole member
By: Blue Torch Offshore Credit Opportunities GP III LLC, its general partner
By: KPG BTC Management LLC, its managing member

Signed by:



_____

Name: Kevin Genda
Title:   Managing Member


Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC OFFSHORE HOLDINGS FUND III-D LLC**
By: Blue Torch Offshore Credit Opportunities Master Fund III LP, its Sole Member
By: Blue Torch Offshore Credit Opportunities GP III LLC, its General Partner
By: KPG BTC Management LLC, its managing member



Signed by:

*Kevin Genda*
—— 4643C05D4751492

Name: Kevin Genda
Title:   Managing Member


Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BTC OFFSHORE HOLDINGS FUND III LLC**
By: Blue Torch Offshore Credit Opportunities Master Fund III LP, its Sole Member
By: Blue Torch Offshore Credit Opportunities GP III LLC, its General Partner
By: KPG BTC Management LLC, its managing member

Signed by:



Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BLUE TORCH CREDIT OPPORTUNITIES KRS FUND LP**
By: Blue Torch Credit Opportunities KRS GP LLC, its general partner
By: KPG BTC Management LLC, its sole member

Signed by:

Kevin Genda

4643C0E504751492

Name: Kevin Genda
Title:   Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com



Docusign Envelope ID: A6968F00-CF4C-4D8B-9805-629374F5CEF4

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**

**BLUE TORCH CREDIT OPPORTUNITIES SBAF FUND LP**
By: Blue Torch Credit Opportunities SBAF GP LLC, its general partner
By: KPG BTC Management LLC, its sole member



Name: Kevin Genda
Title:  Managing Member

Address: 150 East 58th Street, 39th Floor, New York, NY 10155

E-mail address(es): doflanagan@bluetorchcapital.com; erackear@bluetorchcapital.com

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**


**CB NC CO-INVEST, L.P.**
By: CB NC Co-Invest GP, L.P., its general partner
By: CSCP IV Cayman GP, Ltd., its general partner



_____
Name: Richard Grissinger
Title:    Authorized Signatory


Address: 375 Park Avenue, New York, NY 10152

E-mail address(es): scao@centerbridge.com, mahmed@centerbridge.com

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**


**CB PH FUND, L.P.**
By: Centerbridge Special Credit Partners General Partner IV, L.P., its general partner
By: CSCP IV Cayman GP, Ltd., its general partner

_____
Name: Richard Grissinger
Title:    Authorized Signatory


Address: 375 Park Avenue, New York, NY 10152

E-mail address(es): scao@centerbridge.com, mahmed@centerbridge.com



**Consenting Stakeholders' Signature Page to
the Restructuring Support Agreement**


**CENTERBRIDGE CREDIT CS, L.P.**
By: Credit and SCIII General Partner, L.L.C., its general partner



_____
Name: Richard Grissinger
Title:    Authorized Signatory


Address: 375 Park Avenue, New York, NY 10152

E-mail address(es): scao@centerbridge.com, mahmed@centerbridge.com

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**CENTERBRIDGE SPECIAL CREDIT PARTNERS IV – I CO-INVEST, L.P.**
By: Centerbridge Special Credit Partners General Partner IV, L.P., its general partner
By: CSCP IV Cayman GP, Ltd., its general partner



_____
Name: Richard Grissinger
Title:    Authorized Signatory


Address: 375 Park Avenue, New York, NY 10152

E-mail address(es): scao@centerbridge.com, mahmed@centerbridge.com

**MASS MUTUAL ASCEND LIFE INSURANCE COMPANY**
By: Centerbridge Martello Advisors, LLC, its Investment Manager

_____
Name: Richard Grissinger
Title:    Authorized Signatory


Address: 375 Park Avenue, New York, NY 10152

E-mail address(es): scao@centerbridge.com, mahmed@centerbridge.com

